**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **B.V., M.V., and A.V.**

**No. 21-0060** (Roane County 19-JA-56, 19-JA-57, and 19-JA-58)

**MEMORANDUM DECISION**

Petitioner grandmother and intervenor N.V., by counsel Michael Hicks, appeals the Circuit Court of Roane County's December 28, 2020, order denying her motion for permanent placement of B.V., M.V., and A.V.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Leslie L. Maze, filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for permanent placement of the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2019, the DHHR filed a child abuse and neglect petition alleging that M.V. disclosed that her father, C.V., had sexually abused her on multiple instances and that her mother, J.V.,[2] witnessed the most recent instance of abuse but failed to report C.V. to law enforcement. The DHHR further alleged that J.V. and C.V. subjected the children to emotional trauma and mental abuse by engaging in an incestuous relationship. J.V. is the biological niece of C.V., and C.V. admitted to engaging in a continuing sexual relationship with her in violation of West Virginia law. In November of 2019, the circuit court adjudicated the parents as abusing parents.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner is J.V.'s mother.

The circuit court held dispositional hearings in January, February, and March of 2020. Relevant to this appeal, J.V. testified that she was not comfortable with petitioner, who is J.V.'s mother, visiting or having custody of the children. J.V. explained that she had been sexually abused twice prior to the commencement of her incestuous relationship with C.V., which began at age fifteen. J.V.'s oldest brother (petitioner's son) sexually abused her when she was about five years old. J.V. recalled that petitioner "took me into my room, and she yelled at me for letting somebody touch me," but she did not recall that her older brother received any reprimand. J.V. was also sexually abused by her cousin, the son of C.V. J.V. testified that she confronted petitioner and her father about the abuse she suffered as a child, and petitioner "said she didn't remember anything from any of them." J.V. strongly believed that petitioner was aware about both instances of abuse. J.V. also testified that, when she confronted her parents about the abuse, her father (petitioner's husband) "started coming up with excuses to why" C.V. engaged in a sexual relationship with her. J.V. believed that her father was defending C.V. and she did not feel comfortable with her children being with somebody who would defend C.V.

Ultimately, the circuit court terminated J.V.'s parental rights to the children in April of 2020. In that final dispositional order, the circuit court made the following findings of fact which are relevant to this appeal:

> [J.V.] does not want her children to have visitation with her parents. [J.V.] testified that she confronted her parents regarding the sexual abuse she suffered as a child and the fact that she got in trouble instead of the abusers. She testified that her mother [petitioner] denied any knowledge of the sexual abuse when [J.V.] knows that [petitioner] was aware. She testified that her father questioned her as to why she never told him about the sexual abuse and then began justifying and making excuses for [C.V.] She testified that her parents were aware that [C.V.] was the biological father of all three of her children.

J.V. appealed the termination of her parental rights, and this Court affirmed the circuit court's final dispositional order. *See In re B.V., M.V., and A.V.*, No. 20-0582, 2020 WL 7259948 (W. Va. Dec. 10, 2020)(memorandum decision).[3]

In May of 2020, petitioner filed a motion to intervene and a motion for permanent placement of the children. The circuit court took petitioner's motions under advisement. In August of 2020, the circuit court convened for a review hearing. Petitioner moved the court to order the DHHR to complete a home study of her home and hold a hearing on her motion for permanent placement of the children. The circuit court took petitioner's motion under advisement and scheduled a review hearing to allow the DHHR to prepare an update on the status of petitioner's

---

[3]The father, C.V., voluntarily relinquished his parental rights to the children, and he did not appeal the circuit court's order accepting that relinquishment and terminating his parental rights.

home study.[4] At the subsequent review hearing in September of 2020, the DHHR reported that petitioner's home study was still pending. It reported that petitioner's home "would likely pass the home study, but with concerns." The DHHR and the guardian objected to placing the children with petitioner.

Finally, in December of 2020, the circuit court held an evidentiary hearing on petitioner's motion for permanent placement of the children. Petitioner testified that she had a close relationship with the children, indicating that she was present for their respective births and spent weeks visiting the children throughout their lives. She further testified that in May of 2010, she had guardianship of the children for a period of time while the mother worked out of town for weeks at a time. In regard to the mother's testimony during the dispositional hearings, petitioner stated that J.V. had accused her oldest son of sexually inappropriate conduct and that she sought therapy for the brother thereafter. Petitioner testified that she was unaware C.V. was the father of her grandchildren until these proceedings began. She attributed J.V.'s pregnancies to J.V.'s occasional and short-lived relationships. She stated that she never suspected that J.V. and C.V. were in a sexual relationship. Although paternity testing had established that C.V. was the father of all three children, petitioner testified that she still questioned paternity because she believed that C.V. had a vasectomy based on conversations with C.V.'s ex-wife.

Ultimately, the circuit court relied on the prior testimony of J.V. that petitioner and her husband knew that C.V. was the biological father of all three children and that petitioner knew J.V. had been sexually abused as a child. The court found that petitioner allowed J.V. to be placed in the care of C.V. when she was a minor and allowed J.V. to be sexually abused by C.V. Finally, the circuit court concluded that petitioner could not protect the infant respondents and that placement in her care was not in their best interests. The circuit court memorialized its decision in its December 28, 2020, order. Petitioner now appeals this decision.

The Court has previously held:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

---

[4]It appears from the record that petitioner's home was located in Ohio. Thus, the DHHR relied on Ohio's Columbiana County Department of Job and Family Services to complete the home study.

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court's findings were clearly erroneous in light of the record viewed in its entirety and that it was in the children's best interests to be placed in her care. She emphasizes the strong bond that she had with all three children, which was unrebutted. She also emphasizes that her home was inspected and found to be fit and suitable for placement of the children. Finally, she asserts that she provided reasonable explanations as to why she was not aware of J.V.'s incestuous relationship with C.V. and that she would protect the infant respondents if granted custody. Upon our review, we find no error in the circuit court's denial of petitioner's motion for permanent placement of the children.

West Virginia law sets forth a preference for adoption of a child by their grandparents if possible. *See* W. Va. Code § 49-4-114(a)(3).[5] "[West Virginia Code § 49-4-114(a)(3)] contemplates that placement with grandparents is presumptively in the best interests of the child, and the preference for grandparent placement may be overcome only where the record reviewed in its entirety establishes that such placement is not in the best interests of the child." Syl. Pt. 7, in part, *In re P.F.*, 243 W. Va. 569, 848 S.E.2d 826 (2020) (internal citation omitted). We have reiterated that the "grandparent preference" is not absolute and that placement must "be in the best interests of the child, given all circumstances of the case." *Id*. at 570, 848 S.E.2d at 827, syl. pt. 8, in part.

Here, we find no error in the circuit court's conclusion that permanent placement with petitioner was not in the children's best interest. While we acknowledge the testimony regarding the bond between petitioner and the children, J.V.'s testimony that petitioner failed to protect her from sexual abuse as a child is extremely troubling. J.V. testified that petitioner was aware of sexual abuse that was perpetrated upon her as a child and that petitioner had blamed J.V. for that abuse. Further, the circuit court found that, based upon J.V.'s testimony, petitioner had allowed C.V. to sexually abuse J.V. as a minor. Although petitioner attempted to provide explanations for her past actions, the circuit court gave more weight to J.V.'s earlier testimony in its findings of fact, which is a credibility determination we will not undermine. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.")

---

[5]For purposes of any placement of a child for adoption by the department, the department shall first consider the suitability and willingness of any known grandparent or grandparents to adopt the child. Once grandparents who are interested in adopting the child have been identified, the department shall conduct a home study evaluation, including home visits and individual interviews by a licensed social worker. If the department determines, based on the home study evaluation, that the grandparents would be suitable adoptive parents, it shall assure that the grandparents are offered the placement of the child prior to the consideration of any other prospective adoptive parents.

W. Va. Code § 49-4-114(a)(3).

4

Petitioner argues there are factual similarities between this case and *Napoleon S. v. Walker*, 217 W. Va. 254, 617 S.E.2d 801 (2005). In *Napoleon S.*, the circuit court denied grandparents permanent placement of their grandchild, in part, because of their inability to accept that their son caused their grandchild serious physical injuries and their inability to "ensure the safety of the child." *Id*. at 258, 617 S.E.2d at 805. This Court reversed the circuit court's order in *Napoleon S.* upon compelling evidence that, even though the grandparents had not accepted their son's culpability, they had fully agreed to restrict contact between their son and grandchild, if granted custody. *Id*. at 262, 617 S.E.2d at 809. Here, petitioner argues that she accepted that an incestuous relationship had occurred between J.V. and C.V. She also emphasizes her testimony that she would protect the children and prevent future contact between J.V. and the children if required. We find that these cases are quite distinguishable. In *Napoleon S.*, the circuit court was concerned that the grandparents would not protect their grandchild from potential contact with their son, which was remedied by their assurance that they would abide by a no contact order. Here, however, the circuit court was concerned that petitioner did not have the capacity to protect the children based upon her inability to protect J.V. from sexual abuse while J.V. was a minor in petitioner's care. Although petitioner assured the circuit court that she would protect the children, the evidence showed that she had already failed in the past to protect minors in her care from sexual abuse. Thus, we agree with the circuit court that it would not be in the children's best interests to be placed in petitioner's care, given all the circumstances of this case.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 28, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: June 22, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

5